UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE BOEING COMPANY,

               Plaintiff,

                                    Civil Action No.  16-1061-EFM-TJJ

     v.

UNITED STATES OF AMERICA,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## CONSENT DECREE

129045819.1

## TABLE OF CONTENTS

I.      BACKGROUND ................................................................................ - 3 -
II.     JURISDICTION ................................................................................ - 4 -
III.    PARTIES BOUND ............................................................................ - 4 -
IV.     DEFINITIONS .................................................................................. - 4 -
V.      PAYMENT OF RESPONSE COSTS .............................................. - 9 -
VI.     COVENANTS BY BOEING ............................................................ - 14 -
VII.    RESERVATION OF RIGHTS BY BOEING ................................... - 15 -
VIII.   RESERVATION OF RIGHTS BY UNITED STATES ..................... - 17 -
IX.     EFFECT OF SETTLEMENT; CONTRIBUTION ........................... - 18 -
X.      RETENTION OF RECORDS ........................................................... - 19 -
XI.     NOTICES AND SUBMISSIONS..................................................... - 20 -
XII.    RETENTION OF JURISDICTION .................................................. - 21 -
XIII.   APPENDICES .................................................................................. - 21 -
XIV.    MODIFICATION ............................................................................. - 22 -
XV.     SIGNATORIES/SERVICE ............................................................... - 22 -
XVI.    FINAL JUDGMENT ........................................................................ - 24 -

129045819.1

## I.   BACKGROUND

A.     This case concerns a dispute between Plaintiff, The Boeing Co. ("Boeing") and Defendant, United States of America ("United States"), regarding the allocation of responsibility for Response Actions and for the payment of Response Costs related to the Site, which is located in Wichita, Kansas.

B.     Boeing has filed a Complaint seeking reimbursement from the United States for Response Costs and a declaratory judgment of the United States' liability under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675.

C.     This Consent Decree is a full and final settlement of all claims set forth in the Complaint and any claims that could have been brought for past and future Response Costs or Response Actions, except as provided for in Sections VII and VIII herein.

D.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, in the public interest, and consistent with CERCLA.

E.     This  Consent Decree was negotiated and executed by Boeing and the United States in good faith and at arm's length and is a fair and equitable compromise of claims that were vigorously contested.  This Consent Decree shall not constitute or be construed as an admission of liability by either Party or as an admission of violation of any law, rule, regulation or policy by either Party.  Furthermore, this Consent Decree shall not constitute or be construed

as an admission or denial by either Party with respect to any factual or legal allegation or issue with respect to the Site.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.   JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9607, and 9613(b).

## III.   PARTIES BOUND

2.      This Consent Decree is binding upon the United States and upon Boeing and its successors and assigns.  Any change in ownership or corporate or other legal status, including, but not limited to, any bankruptcy, transfer of stock, assets, ownership interests, or real or personal property, shall not alter the Parties' responsibilities and obligations under this Consent Decree.

## IV.   DEFINITIONS

3.      Unless otherwise expressly defined in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply for purposes of this Consent Decree:

"Air Force" shall mean the United States Air Force.

129045819.1

- 4 -

"Boeing" shall mean Plaintiff, The Boeing Company, a Delaware corporation, including its predecessors-in-interest, as well as its successors, assigns, designees, affiliates, and subsidiaries.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-75.

"Complaint" shall mean the complaint filed in this case, including any amendments thereto.

"Consent Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XIII). In the event of any conflict between this Consent Decree and any Appendix, this Consent Decree shall control except where otherwise specifically noted.

"Corps" shall mean the United States Army Corps of Engineers.

"Day" or "day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"Defendant" shall mean the United States.

"Department of Commerce" shall mean the United States Department of Commerce.

"Double Recovery" shall mean (1) any Third-Party Reimbursement of any of the money being paid by the United States pursuant to this Consent Decree, and/or (2) any compensation of any kind for Response Costs other than the money being paid pursuant to this Consent Decree, provided by the United States to Boeing or Affiliated Contractors, including but not limited to

129045819.1

- 5 -

direct payments, Federal Contract payments or credits, and the compromise of any claims, causes of action, suits, or demands of any kind whatsoever in law or in equity for Response Costs, whether asserted against the United States or other persons or entities.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Eastern Hangar Area" shall mean the area east of Oliver Street, the boundaries of which are depicted in Appendix A, and which is part of the Site as defined herein.

"Effective Date" shall mean the date upon which the approval of this Consent Decree by the Court is recorded on the Court's docket.

"Emery Landfill" shall mean the property whose boundaries are depicted in the map attached as Appendix B, and which is part of the Site as defined herein.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"Federal Contract" shall mean any prime contract, subcontract, or any other agreement transferring value between Boeing and a department, agency, or instrumentality of the United States, including but not limited to contracts for goods or services, grants, and cooperative agreements, regardless of whether Boeing is a prime contractor or subcontractor.

"GSA" shall mean the United States General Services Administration.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund, compounded annually on October 1 of each year, in accordance

129045819.1

with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.  Rates are available online at http://www.epa.gov/ocfopage/finstatement/superfund/int_rate.htm.

"KDHE" shall mean the Kansas Department of Health & Environment, and any successor departments or agencies of the State of Kansas.

"Landfill 440" shall mean the property whose boundaries are depicted in the map attached as Appendix C, and which is part of the Site as defined herein.

"McConnell Air Force Base" shall mean the Air Force Base owned, leased, possessed or operated by the United States and currently under the administrative jurisdiction of the Department of the Air Force, whose boundaries are depicted in the map attached as Appendix D.

"Natural Resource Damages" shall mean damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from a release or threatened release of hazardous substances.

"Non-Settling Owner" shall mean any person, other than a Party to this Consent Decree, that owns or controls any portion of the Site, including but not limited to, Spirit AeroSystems and Air Capital Flight Line.

"Non-Settling Owner's Affected Property" shall mean any portion of the Site owned or controlled by a Non-Settling Owner.

"Paragraph" or "¶" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean Boeing and the United States.

"Plaintiff" shall mean Boeing.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-92 (also known as the Resource Conservation and Recovery Act).

"Response Action" shall mean the cleanup of or response to any solid or hazardous waste, hazardous substance, petroleum, pollutants, or contaminants in, on, at, emanating from, or related to the Site, at any time in the past or the future.

"Response Costs" shall mean all costs of response, including but not limited to direct and indirect costs, incurred or to be incurred by Boeing or any other person related to the cleanup of, response to, or the corrective action or closure associated with any solid or hazardous waste, hazardous substance, petroleum, pollutants, or contaminants in, on, at, emanating from, or related to the Site, including costs to comply with or implement any past or future federal, state, or local environmental requirement or otherwise address environmental conditions at or related to the Site.  Response Costs includes accrued Interest on all such costs and including all payments to, or costs of, State, local or other governmental authorities.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Federal Agencies" shall mean the Air Force, the Corps, the Department of Commerce, and GSA, and any other department, agency, or instrumentality of the United States, and their successor departments, agencies, or instrumentalities.

"Site" shall mean the property located at 3801 South Oliver Street, in Wichita, Kansas, including all real property currently or formerly owned by Boeing at or near this location or on which Boeing operated, and specifically including areas formerly designated or commonly referred to as Plant I or Plancor 140; Plant II or Plancor 139; Air Force Plant 13 and associated facilities; the Emery Landfill; Landfill 440; the 31st and Clifton Site; and all areas or environmental media affected by releases at or from these locations, all as specifically depicted at Appendix E. The term "Site" does not include any portion of McConnell Air Force Base.

"State" shall mean the State of Kansas.

"Third-Party Reimbursement" shall mean any payment of, or consideration for, Response Costs that Boeing or an Affiliated Contractor receives from any person or entity other than the United States, including but not limited to direct payments, insurance or contract recoveries, the discharge of any debt or obligation, or the satisfaction of any claims, causes of action, suits, or demands of any kind whatsoever in law or in equity.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA and the Settling Federal Agencies.

"31st and Clifton Site" shall mean the property whose boundaries are depicted in the map attached as Appendix F, and which is part of the Site as defined herein.

## V.   PAYMENT OF RESPONSE COSTS

4.      As soon as reasonably practicable after the Effective Date, the United States, on behalf of the Settling Federal Agencies, shall pay to Boeing $32,250,000. DOJ will request payment of this amount from the United States Department of Treasury as soon as practicable

129045819.1

after the Effective Date.  Said payment shall be made by Automated Clearinghouse ("ACH")

Electronic Funds Transfer to the following account:

> Beneficiary Bank:  JPMorgan Chase
> Account No.:  9102776581
> Bank ABA:  021000021
> Swift:  CHASUS33
> Beneficiary:  The Boeing Company

5.      **Interest**.  In the event the payment in Paragraph 4 is not made within 120 days

after the Effective Date, Interest on the unpaid balance shall be due and owing by the United

States, such Interest beginning to accrue on the 121st day after the Effective Date and continuing

through the date of the payment.  In the event that the United States cannot make the payment

due to an error in the account information provided by Boeing, any time limits for payments by

the United States shall be tolled until after the correct account information is transmitted to the

United States.

6.      **Compliance with the Anti-Deficiency Act**.  All payment obligations by the

United States under this Consent Decree are subject to the availability of appropriated funds

appropriated for such purpose.  No provision of this Consent Decree shall be interpreted as or

constitute a commitment or requirement that the United States obligate or pay funds in

contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable federal law,

regulation, or requirement.

7.      **No Double Recovery**.

> a.      Except for what has been previously disclosed to the United States in a
>
> confidential mediation conducted between Boeing and the United States pursuant

129045819.1

- 10 -

to the Mediation Process Agreement executed by the parties on March 25 and 26, 2014, as specifically set forth in a document produced by Boeing during said Mediation, dated Oct. 22, 2014 and entitled "Chargeback Report," and as specifically set forth in a second document produced on behalf of Boeing during said Mediation, dated December 2014 and labeled "The Boeing Company, Review of Potential Settlements Offset in CERCLA Contribution Action Against the U.S. Department of Justice," and except for what is or may be identified under subparagraph 7(b) below, based upon its knowledge and belief and subject to the penalties of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* and other applicable law, Boeing hereby warrants that it has not sought or received, and shall not in the future seek or receive, any Double Recovery.

b.      Boeing hereby further acknowledges that in addition to the items listed in paragraph 7(a), it may also have charged to the United States certain Wichita Response Costs in contracts with the United States for the contract performance periods of calendar years 2014, 2015 and/or 2016, although at this time Boeing is unable to ascertain the precise amounts of such charges, if any.  Boeing shall take steps necessary to so ascertain the amount of such charges, if any, and, within 180 days of the date of entry of this Consent Decree, Boeing shall identify said amounts in a notice to the United States and Boeing shall pay the United States dollar for dollar the amount of any Wichita Response Costs that may have been charged to Federal Contracts in calendar years 2014 and 2015 since the date of the Chargeback Report, and/or any Wichita Response Costs included in existing Federal Contracts with performance periods during calendar year 2016 and later.

129045819.1

Said payments shall be made in the form of credits on ongoing Federal Contracts between Boeing and the Air Force, the Corps, or the Department of Defense or any other instrumentality thereof (collectively, the "Department of Defense"), said Federal Contracts to be identified by the Department of Defense, or, at the option of the Department of Defense, shall be made in such other form as the Department of Defense directs.

c.      Boeing shall not include in any claim, contract charge, reimbursement request, or invoice to the United States any costs that are Response Costs for which it has received payment either under this Decree or through Third-Party Reimbursement, whether such a claim or invoice is submitted pursuant to any Federal Contract, or any claim, cause of action, suit, or demand of any kind whatsoever in law or in equity.  All such costs, whether direct or indirect, shall be deemed to be and shall be identified in Boeing's accounting system as "mutually agreed to be unallowable" costs subject to Federal Acquisition Regulation ("FAR") 31.201-6, Accounting for Unallowable Costs, and Cost Accounting Standard ("CAS") 405 (including any subsequent amendments or modifications to FAR 31.201-6 and CAS 405) and thus excluded from any billing, claim, or proposal applicable to any Federal Contracts, including, but not limited to, any final billing, final contract cost proposal, or final overhead rate proposal.

d.      Boeing shall not claim or receive Response Costs pursuant to any indemnification, hold-harmless, or other provision in any Federal Contract.

129045819.1

- 12 -

e.      Boeing shall comply with CAS 405 (including any subsequent amendments or modifications thereto) when accounting for unallowable costs in any billing, claim, or proposal applicable to any Federal Contract.  CAS 405 shall apply even if Boeing is not otherwise subject to CAS.

f.      Any costs rendered unallowable under the terms of this Consent Decree, if included by Boeing in any billing, claim or proposal applicable to any Federal Contract and not returned in accordance with paragraph 7.g., shall be deemed to be costs that have been "determined to be unallowable" and therefore subject to penalties within the meaning of FAR 42.709-1, clause 52.242-3, and related provisions.

g.      Boeing shall provide a complete copy of this Consent Decree to the administrative contracting officials of the United States with cognizance over future Response Costs and to the responsible Boeing official or employee with the responsibility for implementing the obligations or requirements of this Consent Decree.  At present, these include the Boeing Engineering, Operations, and Technology Divisional Administrative Contracting Officer ("EO&T DACO"); the Boeing Defense, Space & Security Home Office Divisional Administrative Contracting Officer ("BDS Home Office DACO"); and the Boeing Corporate Home Office Corporate Administrative Contracting Officer ("Corporate CACO"). Any changes to the titles, duties or responsibilities of these Boeing positions will not relieve Boeing of the obligation to provide a copy of this Consent Decree to any Boeing official or employee with the responsibility for implementing the obligations or requirements of this Consent Decree at any time.

129045819.1

- 13 -

h.      In the event that Boeing or an "Affiliated Contractor" receives a Double

Recovery, within 90 days after such receipt, Boeing shall repay the United States

dollar-for-dollar in the amount of the Double Recovery.  Such amount shall

accrue interest as described in 26 U.S.C. §§ 6621 and 6622 from the date on

which it was received.  If a Double Recovery is received from the United States

pursuant to a Federal Contract, Boeing shall notify the cognizant Contracting

Officer for that Federal Contract in writing within 30 days after discovery of such

receipt, and reimburse the United States by transmitting a sum equal to the

amount of the Double Recovery in accordance with written instructions provided

by the cognizant Contracting Officer.  "Affiliated Contactors" include any

business entity that serves as a subcontractor to Boeing on any of Boeing's

Federal Contracts, or as a prime contractor for Federal Contracts under which

Boeing serves as a subcontractor.

## VI.   COVENANTS BY BOEING

8.      **Covenant Not to Sue**.  Except as specifically provided in Section VII

(Reservation of Rights by Boeing), upon the Effective Date, Boeing forever releases, discharges,

covenants not to sue, and agrees not to assert any claims or causes of action against the United

States, or its officers, contractors, or employees, with respect to Response Costs, Response

Actions, or claims at or related to the Site under any provision of federal or state law, including

but not limited to CERCLA, RCRA, state statute or regulation, contract, tort, equity or common

law.

9.      **Indemnification by Boeing**.  Boeing shall indemnify and hold harmless the

United States against any and all past and future claims, demands, orders, causes of action,

129045819.1

and/or judgments against the United States by any person, company, organization or entity with respect to the environmental conditions at or related to the Site, Response Costs, and/or Response Actions, at or related to the Site, including but not limited to any claims, demands, orders or other administrative or judicial actions brought by governmental entities, by any and all Non-Settling Owners, or by non-governmental entities or persons, provided that the United States has satisfied its payment obligation in Paragraph 4. The United States shall give Boeing written notice pursuant to Paragraph 20 of any claim of which it is aware and for which the United States intends to seek indemnification pursuant to this paragraph. Upon Boeing's request, the United States shall provide documentation relating to the request for indemnification under this Section.

10.     Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d), or any government contract.

## VII.   RESERVATION OF RIGHTS BY BOEING

11.     Boeing reserves, and this Consent Decree is without prejudice to, Boeing's right to seek reimbursement of Response Costs or other payments or relief from the United States for Response Costs incurred after December 31, 2014 related to any release or disposal of hazardous substances in the Eastern Hangar Area of the Site that did not originate or emanate from any source on the Site and that instead originated, emanated or migrated from McConnell Air Force Base or actions of the United States or its contractors conducted at McConnell Air Force Base, but only to the extent that reimbursement of such Response Costs would not constitute a Double Recovery. The parties agree to use best efforts to achieve a negotiated resolution of any demand, claim, or cause of action relating to the hazardous substances referenced in this paragraph,

129045819.1

- 15 -

including the procedures set forth in Paragraph 12 herein.  Nothing herein should be construed as

implying that any contamination in the Eastern Hangar Area or any portion of the Site was

caused by actions or activities on or at McConnell Air Force Base or emanated or migrated from

McConnell Air Force Base.

12.  a.  In the event Boeing believes it has incurred a cost relating to the Site

which is a reserved claim under Paragraph 11 of this Decree and for which it

intends to seek reimbursement from the United States, Boeing shall notify the

United States under the Notification provision at Paragraph 20.  Such Notification

shall include an explanation and documentation supporting the claim that

Response Costs or other obligations incurred at the Site are a reserved claim

under this Section.

b.  The United States shall have ninety (90) days to consider such claim and

gather evidence regarding such claim.  The parties shall cooperate in the

investigation of such claim.

c.  The Parties shall then have sixty (60) days to meet and confer in good

faith in an effort to resolve such reserved claim.  In the event the Parties are

unable to resolve such claim, Boeing is free to pursue any rights it believes are

available under the law regarding such reserved claim.

d.  Nothing in this Consent Decree shall be construed as evidence that the

United States accepts or agrees that it has any financial, remedial, or other

responsibility with regard to any reserved claim under this Section or that the

United States is liable for any costs of response associated with such reserved claim under Section VII of this Decree.

e.     The time periods set forth in this Paragraph may be extended by mutual written agreement of the Parties.

13.     Nothing in this Consent Decree affects Boeing's rights against the United States with respect to liability for Natural Resource Damages. Nothing in this Consent Decree should be construed to conclude that there exist any Natural Resource Damages in or around the Site and, if so, that the United States has any responsibility for such Natural Resources Damages, to the extent they exist.

## VIII. CLAIMS BY UNITED STATES UNAFFECTED BY CONSENT DECREE

14.     Nothing in this Consent Decree affects the United States' rights against Boeing with respect to:

a.     Claims regarding liability for costs of response incurred or to be incurred by the United States on behalf of any non-Settling Federal Agency;

b.     Claims regarding liability for damages for injury to, destruction of, or loss of natural resources or other Natural Resource Damages, including the costs of any natural resource damage assessments;

c.     All claims by or on behalf of EPA, or any other federal agency other than the Settling Federal Agencies performing a Response Action or incurring costs of

response at the Site, including, but not limited to, a claim for injunctive relief or an administrative order under Section 106 of CERCLA, 42 U.S.C. § 9606; and

d.      All claims by or on behalf of Settling Federal Agencies for costs incurred or to be incurred by the United States in the Eastern Hangar Area and/or on McConnell Air Force Base.

## IX.    EFFECT OF SETTLEMENT; CONTRIBUTION

15.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Except as provided in Section VI (Covenants by Boeing), the Parties expressly reserve any and all rights (including, but not limited to, pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f)), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party to this Consent Decree.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional costs of response or Response Action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

With regard to any claim by any third party against the United States, the Parties agree, and by entering this Consent Decree this Court finds, that the United States is entitled to, as of the Effective Date of this Consent Decree, protection from claims by third parties for "Matters Addressed" pursuant to section 113(f) of CERCLA, 42 U.S.C. § 9613(f), and any other applicable provision of law, whether by statute or common law, extinguishing the United States' liability to any person not a party to this Consent Decree.  "Matters Addressed" shall mean any

129045819.1

- 18 -

and all Response Actions and/or Response Costs taken or incurred or to be taken or incurred by Boeing, the State or any person at or related to the Site.

16.     Any rights the United States may have to obtain contribution or otherwise recover costs of response from persons not a party to this Consent Decree are preserved.

17.     **Res Judicata and Other Defenses**.  In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, Boeing shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case.

## X.    RETENTION OF RECORDS

18.     Until ten years after the entry of this Consent Decree, Boeing shall preserve and retain all non-identical copies of records, reports, information or correspondence (hereinafter referred to as "Records") (including records in electronic form) now in its possession or control, or that come into its possession or control, that relate in any manner to response actions taken at the Site or the liability of any person under CERCLA with respect to the Site, regardless of any corporate retention policy to the contrary.  This obligation shall specifically include the Chargeback Report dated Oct. 22, 2014 and the December 2014 Review of Potential Settlements described in paragraph 7 of this Consent Decree, and documents reflecting and/or related to any and all charges described in paragraph 7(b) herein.

19.     After the conclusion of the ten-year document retention period in the preceding Paragraph, Boeing shall notify the Settling Federal Agencies and DOJ at least 90 days prior to

129045819.1

- 19 -

the destruction of any such Records, and, upon request by one of the Settling Federal Agencies or DOJ, Boeing shall deliver any such records to the requesting entity.  Boeing may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Boeing asserts such a privilege, it shall provide DOJ with the following:  (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the subject of the Record; and (6) the privilege asserted.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to DOJ in redacted form to mask the privileged information only.  Boeing shall retain all Records that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Boeing's favor.  However, no Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

## XI.   NOTICES AND SUBMISSIONS

20.    Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to Boeing and the United States, respectively.

**As to the United States**:          Chief
                                      U.S. Department of Justice
                                      Environment and Natural Resources Division
                                      Environmental Defense Section
                                      P.O. Box 7611
                                      Washington, D.C. 20044-7611
                                      Re: DJ # 90-11-6-19953

                                      HQUSACE
                                      Office of the Chief Counsel
                                      CECC-E
                                      441 G Street, NW
                                      Washington, DC 20314

**As to Boeing**:                     Chief Counsel, Environment, Health and Safety Law
                                      Group
                                      Office of the General Counsel
                                      The Boeing Company
                                      P.O. Box 3707, MC 7A-XP
                                      Seattle, WA 98124-2207

                                      With copy to:

                                      Mark W. Schneider
                                      Perkins Coie L.L.P.
                                      1201 Third Avenue
                                      Suite 4900
                                      Seattle, WA 98101-3099

## XII.  RETENTION OF JURISDICTION

21.     This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XIII. APPENDICES

22.     The following appendices are attached to and incorporated into this Consent Decree:

    a.      Appendix A:  Map of Eastern Hangar Area

    b.      Appendix B:  Map of Emery Landfill

129045819.1

    c.      Appendix C: Map of Landfill 440

    d.      Appendix D: Map of McConnell Air Force Base

    e.      Appendix E: Map of Entire Site

    f.      Appendix F: Map of 31st and Clifton Area

## XIV. MODIFICATION

23.    Any modifications to this Consent Decree shall be in writing, signed by the United States and Boeing, and shall be effective upon approval by the Court.

## XV.  SIGNATORIES/SERVICE

24.    The undersigned representative of Boeing and the signatory for the Department of Justice certify that they are fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

25.    Boeing agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Boeing in writing that it no longer supports entry of the Consent Decree.

26.    Boeing shall identify, on the signature page of this Consent Decree, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of Boeing with respect to all matters arising under or relating to this Consent Decree.

27.    The United States need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XIX.  GENERAL PROVISIONS

28.   **Complete Agreement.** This Consent Decree contains the complete agreement between the Parties regarding the subject matter addressed herein and fully supersedes all prior contracts, agreements, understandings, negotiations or discussions, oral or written, relating to the subject matter hereof.  There are no warranties, representations, agreements or understandings, oral or written, relating to the subject matter hereof that are not fully expressed or provided for herein.

29.   **Headings.** Any paragraph or subparagraph headings or section titles in this Consent Decree are provided solely as a matter of convenience to the reader and shall not be construed to alter the meaning of any paragraph or provisions of this Consent Decree.

30.   **Governing Law.** This Consent Decree shall be governed and interpreted in accordance with federal law.

31.   **Original Counterparts.** This Consent Decree may be executed in original counterparts, all of which together shall be deemed to constitute one Consent Decree.  The execution of one counterpart by any Party shall have the same force and effect as if that Party had signed all other counterparts.

32.   **Application of Consent Decree to Successors and Assigns.** This Consent Decree applies to, is binding upon, and inures to the benefit of the Parties and any successors, assigns, and designees of the Parties.  Any change of ownership, corporate or other legal status of Boeing, including, but not limited to, bankruptcy, a transfer of assets of real or personal property, shall in no way alter the obligations of any of the Parties under this Consent Decree. Boeing shall provide notice to the United States within thirty (30) days after the effective date of any change in corporate or other legal status.

129045819.1

33.   **No Use as Evidence**.  This Consent Decree shall not be admitted into evidence or admissible as evidence in any action or proceeding other than the above-captioned action in which this Consent Decree is entered, except for the following:

> a.   An action, cross-claim, or counterclaim brought by the United States or Boeing to enforce this Consent Decree; and

> b.   Any proceeding where the United States seeks to establish that it is entitled to protection from claims under this Consent Decree, or to enforce Boeing's indemnification of the United States under Paragraph 9, or any action or proceeding related to the obligations of Boeing under this Consent Decree, including any administrative or judicial proceeding related to or resulting from any Federal Contract.

34.   Boeing warrants and represents that it has made no assignment or transfer of all or any part of its rights arising out of or relating to Response Actions or Response Costs, including to the State of Kansas.  For purposes of this section, "assignment or transfer" shall not be deemed to include any general corporate reorganizations, mergers, assignments, transfers, or acquisitions that have occurred prior to or during the course of this litigation; provided, however, that Boeing has given the United States written notice of such assignment or transfer before the Effective Date, and that the parties to any such assignment or transfer have acknowledged or agreed, in writing, to be bound by the terms of this Decree.

## XVI. FINAL JUDGMENT

This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the

Consent Decree.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.  Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and Boeing.

So CONSENTED and AGREED to by:

**FOR THE BOEING COMPANY:**

Date: ___December 15, 2015___

Mark W. Schneider
Partner
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099


Agent for Services of Process:
Corporation Service Company as Registered Agent
for The Boeing Company
300 Deschutes Way SW, Suite 304
Tumwater, WA 98501

**FOR THE UNITED STATES OF AMERICA:**

JOHN C. CRUDEN
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
Washington, D.C. 20530

Date: Feb. 24, 2016

Perry M. Rosen
Kate R. Bowers
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611

129045819.1

- 25 -



APPENDIX A

EASTERN HANGAR AREA

S. OLIVER ST.

Eastern Hangar
Area

N

W        E

S

0        750        1,500
Feet

1 inch = 833 feet

**Legend**

EASTERN HANGAR AREA



APPENDIX B

EMERY LANDFILL

Emery Landfill

N
W    E
S

0    500    1,000
Feet

1 inch = 539 feet

Legend

— EMERY LANDFILL



APPENDIX C

LANDFILL 440

Landfill 440

1 inch = 281 feet

Legend

LANDFILL 440



APPENDIX D

MCCONNELL AFB

McConnell Air Force Base

Feet

3,000

1,500

1 inch = 1,667 feet

0

N
W   E
S

S. OLIVER ST.

Legend

MCCONNELL AFB





APPENDIX F

31st & CLIFTON AREA

N
W E
S

1,000 Feet
500
0
1 inch = 594 feet

31st & Clifton Area

Legend

31st & CLIFTON AREA